FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

## Sep 27, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CLARINDA G.,[1] | No. 1:20-cv-03126-MKD |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[2] | |
| Defendant. | **ECF Nos. 15, 16** |

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER - 1

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 15, 16. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 15, and grants Defendant's motion, ECF No. 16.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

ORDER - 2

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are

supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §§

404.1502(a), 416.902(a).  Further, a district court "may not reverse an ALJ's

decision on account of an error that is harmless." *Id*.  An error is harmless "where

it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at

1115 (quotation and citation omitted).  The party appealing the ALJ's decision

generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*,

556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act.  First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be

"of such severity that he is not only unable to do his previous work[,] but cannot,

considering his age, education, and work experience, engage in any other kind of

ORDER - 3

substantial gainful work which exists in the national economy." 42 U.S.C. §

1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §

416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work

activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial

gainful activity," the Commissioner must find that the claimant is not disabled. 20

C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two. At this step, the Commissioner considers the severity of the

claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from

"any impairment or combination of impairments which significantly limits [his or

her] physical or mental ability to do basic work activities," the analysis proceeds to

step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy

this severity threshold, however, the Commissioner must find that the claimant is

not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity. 20 C.F.R. §

416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the

ORDER - 4

1  enumerated impairments, the Commissioner must find the claimant disabled and

2  award benefits.  20 C.F.R. § 416.920(d).

3      If the severity of the claimant's impairment does not meet or exceed the

4  severity of the enumerated impairments, the Commissioner must pause to assess

5  the claimant's "residual functional capacity."  Residual functional capacity (RFC),

6  defined generally as the claimant's ability to perform physical and mental work

7  activities on a sustained basis despite his or her limitations, 20 C.F.R. §

8  416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

9      At step four, the Commissioner considers whether, in view of the claimant's

10  RFC, the claimant is capable of performing work that he or she has performed in

11  the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is

12  capable of performing past relevant work, the Commissioner must find that the

13  claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of

14  performing such work, the analysis proceeds to step five.

15      At step five, the Commissioner considers whether, in view of the claimant's

16  RFC, the claimant is capable of performing other work in the national economy.

17  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

18  must also consider vocational factors such as the claimant's age, education and

19  past work experience.  *Id.*  If the claimant is capable of adjusting to other work, the

20  Commissioner must find that the claimant is not disabled.  20 C.F.R. §

ORDER - 5

416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On January 26, 2015, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset date of January 26, 2015.[3] Tr. 13, 113,

---

[3] In November 2012, Plaintiff filed an application for Title XVI benefits; the application was denied and resulted in a November 26, 2014 unfavorable decision from an ALJ. *See* Tr. 13, 87-112. At the 2019 hearing for Plaintiff's current (2015) application for benefits, the ALJ found that although the prior 2014 unfavorable ALJ decision created a presumption of continuing non-disability under *Chavez*, the presumption had been rebutted because of new and material evidence relating to the findings in steps two and three, and because Plaintiff's substance use

ORDER - 6

259-64.  The application was denied initially, and on reconsideration. Tr. 138-46, 150-56.  Plaintiff appeared before an administrative law judge (ALJ) on May 7, 2019.  Tr. 46-86.  On July 19, 2019, the ALJ denied Plaintiff's claim.  Tr. 10-31.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 26, 2015, the date the application was filed.  Tr. 15.  At step two, the ALJ found that Plaintiff has the following severe impairments: diabetes mellitus; obesity; anxiety disorder; depressive disorder; posttraumatic stress disorder (PTSD); and a personality disorder.  Tr. 16.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  *Id*.  The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [S]he is limited to unskilled, repetitive, and routine work; cannot have contact with the general public as part of her job duties; can have occasional contact with co-workers and supervisors; would be off task

_____

disorder was no longer severe; and due to the change in criteria in evaluating mental health impairments since the prior decision was issued.  Tr. 13; *see Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1998); *see also* Acquiescence Ruling (AR) 97-4(9), available at 1997 WL 742758 at *3.

ORDER - 7

no more than ten percent of the work shifts, but otherwise able to meet production standards; and absent from work once per month or less. Tr. 18.

At step four, the ALJ adopted the findings from the prior hearing decision, finding Plaintiff is able to perform her past relevant work as an agricultural produce worker.  Tr. 24; *see* Tr. 105-106.  At step five, the ALJ also made the alternate finding that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as inspector hand packager, small products assembler, and electrical accessories assembler.  Tr. 25.  Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the date of the application through the date of the decision.  Tr. 26.

On June 17, 2020, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated the medical opinion evidence;

ORDER - 8

2.  Whether the ALJ properly evaluated Plaintiff's symptom claims;

3.  Whether the ALJ erred by not obtaining medical expert testimony;

4.  Whether the ALJ properly evaluated Plaintiff's past relevant work; and

5.  Whether the ALJ conducted a proper step-five analysis.

ECF No. 15 at 2.

## DISCUSSION

### A. Medical Opinion Evidence

Plaintiff contends the ALJ erred by giving less weight to the opinions of examining psychologists Alexander Patterson, Psy.D and R.A. Cline, Psy.D in favor of reviewing psychologist Michael Regets, Ph.D.  ECF No. 15 at 12-18.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of

ORDER - 9

specialists concerning matters relating to their specialty over that of

nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ

may reject it only by offering "clear and convincing reasons that are supported by

substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

"However, the ALJ need not accept the opinion of any physician, including a

treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

(9th Cir. 2009) (internal quotation marks and brackets omitted).  "If a treating or

examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

may only reject it by providing specific and legitimate reasons that are supported

by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81

F.3d 821, 830-31 (9th Cir. 1995)).  The opinion of a nonexamining physician may

serve as substantial evidence if it is supported by other independent evidence in the

record.  *Andrews*, 53 F.3d at 1041.

*1. Dr. Patterson*

In November 2016, Dr. Patterson performed a mental health consultative

evaluation and rendered an opinion on Plaintiff's level of functioning.  Tr. 447-52.

Dr. Patterson diagnosed Plaintiff with bipolar I disorder; panic disorder with

agoraphobia; alcohol use disorder, in sustained full remission; and amphetamine

1  use disorder, in sustained full remission; and he indicated substance-induced

2  psychotic disorder should be ruled out.  Tr. 451.  Dr. Patterson opined Plaintiff

3  would not have difficulty performing simple and repetitive tasks; and she would

4  have difficulty performing detailed and complex tasks due to impulsivity,

5  distractibility, and generally poor judgement secondary to mood instability and

6  history of visual and auditory hallucinations, "which would likely interfere with

7  her ability to engage in complex tasks."  Tr. 451-52.  He opined she would not

8  have difficulty accepting instructions from supervisors, but that she would have

9  difficulty interacting with coworkers and the public due to impulsive behavior; he

10 noted "her mood is elevated and her behavior would be inappropriate in most

11 public settings."  Tr. 452.  He also opined Plaintiff would have difficulty

12 performing work activities on a consistent basis without special or additional

13 instructions due to distractibility, disorganization, and poor judgement secondary

14 to mania.  *Id*.  He opined she would not have difficulty maintaining regular

15 attendance in the workplace, but that she would have difficulty completing a

16 normal workday without interruptions from her psychiatric disorders, as they cause

17 panic attacks, auditory and visual hallucinations, impulsivity, and distractibility

18 and "these symptoms worsen in public settings."  *Id*.  He opined Plaintiff would

19 have difficulty dealing with the usual stress encountered in a workplace due to her

20

ORDER - 11

chronic and complex psychiatric problems, elevated mood, poor judgement, and poor coping skills. *Id.*

The ALJ gave little weight to Dr. Patterson's opinion. Because the opinion conflicts with Dr. Regets's opinion, the ALJ was required to set forth specific and legitimate reasons to reject it. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found the opinion was vague and not well supported. Tr. 23. "[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Additionally, an ALJ need not accept an opinion that is vague and fails to specify limitations in a meaningful fashion. *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) ("[T]he ALJ found that [the doctor's] descriptions of Ford's ability to perform in the workplace as 'limited' or 'fair' were not useful because they failed to specify Ford's functional limits. Therefore, the ALJ could reasonably conclude these characterizations were inadequate for determining RFC."). Here, Dr. Patterson failed to define what he meant by "difficulty" or otherwise explain in a meaningful fashion how Plaintiff would be functionally limited in the areas Dr. Patterson noted. Without any explanation of the level of difficulty Plaintiff would experience and how that translated into functional limitations, if any, the ALJ reasonably concluded that Dr. Patterson's opinion was vague. The vagueness of

ORDER - 12

the opinion was a valid reason to discount it.  *See Bray*, 554 F.3d at 1228; *Ford*, 950 F.3d at 1156.

Second, the ALJ gave little weight to Dr. Patterson's opinion because it was inconsistent with the record as a whole; the ALJ found that her presentation at the evaluation was unlike her usual presentation at other appointments.  Tr. 23. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  Here, the ALJ noted she presented with slightly rapid and tangential speech at the consultative evaluation, but that she rarely if ever presented to primary care appointments with any mental abnormality such as rapid speech.  Tr. 23 (citing Tr. 402-34, 438-46).  For example, she was observed to be alert and oriented at office visits in 2015, 2016, and 2017.  *See, e.g.*, Tr. 404, 409, 415, 423, 431, 442, 519, 540.  Dr. Cline also noted her speech was within normal limits upon mental status exam in 2014, Tr. 596, and at an office visit in January 2015 she appeared alert and oriented with appropriate speech.  Tr. 404.  Her mood, affect, memory, and judgement appeared normal at appointments in 2015, 2016, 2017, and 2018.  Tr. 379, 386, 431, 443, 512, 520, 540.  The ALJ reasonably found Plaintiff's presentation at Dr. Patterson's evaluation was inconsistent with her

usual presentation at appointments, and this was a specific and legitimate reason to reject Dr. Patterson's opinion.

Finally, the ALJ rejected Dr. Patterson's opinion because Dr. Patterson saw Plaintiff on a single occasion and reviewed only a few records, and therefore had little understanding of the overall record. Tr. 23-24. The extent to which a medical source is "familiar with the other information in [Plaintiff's] case record" is relevant in assessing the weight of that source's medical opinion. *See* 20 C.F.R. § 416.927(c)(6). Here, Dr. Patterson indicated he reviewed progress notes from two visits with other providers, one in 2014 and one in 2015, along with Plaintiff's 2016 adult function self-report for her disability claim. Tr. 447; *see* Tr. 297-04. As discussed *supra*, the ALJ reasonably found that Plaintiff's presentation at Dr. Patterson's evaluation was inconsistent with her usual presentation at appointments, based upon a review of the evidence as a whole. The fact that Dr. Patterson was unfamiliar with other information in Plaintiff's case record, and because this information was inconsistent with his evaluation, the ALJ reasonably gave less weight to his opinion. This was a specific and legitimate reason to give Dr. Patterson's opinion less weight.

*2. Dr. Cline*

In September 2014, Dr. Cline performed a psychological/psychiatric evaluation on behalf of DSHS and rendered an opinion on Plaintiff's level of

ORDER - 14

functioning.  Tr. 593-597.  Dr. Cline diagnosed Plaintiff with PTSD; major

depressive disorder, recurrent and moderate; alcohol use disorder, mild, active;

methamphetamine use disorder, with recent relapse; and personality disorder NOS,

with features of dependent and avoidant personality disorders; Dr. Cline noted

Plaintiff was unemployed, living with her parents, and with limited access to

resources.  Tr. 595.  Dr. Cline opined Plaintiff had mild limits in her ability to

understand, remember, and persist in tasks by following very short and simple

instructions, and in her ability to learn new tasks and adapt to changes in a routine

work setting; she had moderate limits in her ability to understand, remember, and

persist in tasks by following detailed instructions, and in her ability to perform

activities within a schedule, maintain regular attendance, and be punctual within

customary tolerances without special supervision, and to perform routine tasks

without special supervision, make simple work related decisions, be aware of

normal hazards and take appropriate precautions, ask simple questions or request

assistance, communicate and perform effectively in a work setting, and to set

realistic goals and plan independently; and marked limitation in her ability to

complete a normal workday and workweek without interruptions from

psychologically based symptoms, and to maintain appropriate behavior in a work

setting.  Tr. 595-96.

ORDER - 15

Dr. Cline opined that her impairments were not primarily the result of alcohol or drug use within the past 60 days, that her current impairments would persist following 60 days of sobriety, and she explained that Plaintiff "needs to maintain her sobriety, and may need support to do this, but this should be provided by her mental health therapist." *Id.* She did not recommend chemical dependency assessment or treatment. Tr. 596. She opined Plaintiff should be seeing her mental therapist weekly and "she needs to have current psychiatric care in the form of medications." She explained "her main barrier to employment however is her personality traits of dependence and avoidance and she will need significant 'pushes' to become more independent and self-sufficient." *Id.* The ALJ gave little weight to Dr. Cline's opinion.

First, the ALJ noted that Dr. Cline's evaluation predated the onset date by several months and did not occur within the relevant period. Tr. 23. "Medical opinions that predate the alleged onset of disability are of limited relevance." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). Additionally, a prior ALJ determined Plaintiff was not disabled in November 2014, Tr. 87-112, based on medical evidence including Dr. Cline's evaluation, which the prior ALJ gave minimal weight. *See* Tr. 105. Dr. Cline's evaluation took place during a period where Plaintiff was found not disabled, and before Plaintiff's current alleged onset of disability. *See, e.g.,* Tr. 13, 258, 274. The ALJ reasonably

ORDER - 16

gave this opinion less weight as it was rendered prior to the relevant period at issue for Plaintiff's current SSI claim, and this was a specific and legitimate reason to give Dr. Cline's opinion less weight.

Next, the ALJ gave Dr. Cline's opinion little weight because it was inconsistent with the record as a whole and Dr. Cline had "little understanding of the overall record on which to form an opinion." Tr. 23. The extent to which a medical source is "familiar with the other information in [Plaintiff's] case record" is relevant in assessing the weight of that source's medical opinion. *See* 20 C.F.R. § 416.927(c)(6). An ALJ may also discredit physicians' opinions that are unsupported by the record as a whole. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Here, the ALJ noted Dr. Cline saw Plaintiff on one occasion and did not review any treatment records. Tr. 23. The ALJ explained that treatment records "would have given Dr. Cline an independent, objective picture of [Plaintiff's] history, progress, and response to treatment." *Id*. The ALJ also noted Dr. Cline's report that Plaintiff was not a good historian at the evaluation. Tr. 23 (citing Tr. 593). Dr. Cline explained that Plaintiff was a "rather difficult historian . . . when asked questions she prefers to answer with 'I don't know.'" Tr. 593. The ALJ found that Dr. Cline's opinion was also inconsistent with evidence as of Plaintiff's current alleged onset date, including her ability to live with many family members and her ability to assist in caring for nieces and

1    nephews.  Tr. 23.  The ALJ reasonably gave Dr. Cline's 2014 opinion little weight

2    because it was inconsistent with the record as a whole and Dr. Cline had "little

3    understanding of the overall record on which to form an opinion" during the period

4    at issue.  This was also a specific and legitimate reason to give Dr. Cline's opinion

5    less weight.

6         Finally, the ALJ found that Dr. Cline's opinion was inconsistent with

7    findings upon mental status exam, and that Dr. Cline did not sufficiently support

8    her findings.  Tr. 23.  "[T]he ALJ need not accept the opinion of any physician,

9    including a treating physician, if that opinion is brief, conclusory and inadequately

10   supported by clinical findings."  *Bray*, 554 F.3d at 1228.  Relevant factors to

11   evaluating any medical opinion include the amount of relevant evidence that

12   supports the opinion, the quality of the explanation provided in the opinion, and the

13   consistency of the medical opinion with the record as a whole.  *Lingenfelter*, 504

14   F.3d at 1042; *Orn*, 495 F.3d at 631.

15        Here, the ALJ noted upon mental status exam Plaintiff's speech was within

16   normal limits, she was cooperative, and her memory, fund of knowledge, and

17   concentration were all within normal limits.  Tr. 23; *see* Tr. 596-97.  The ALJ

18   found these mental status findings did not support Dr. Cline's "moderate rating in

19   effective communication or marked rating in maintaining appropriate behavior."

20   Tr. 23.  The ALJ also noted that while Dr. Cline indicated Plaintiff's thought

ORDER - 18

process and content were not within normal limits, Dr. Cline "did not explain why the category was abnormal"; the ALJ concluded this was insufficient.  Tr.23; *see* Tr. 597.  Additionally, elsewhere in her evaluation, Dr. Cline reported that "Plaintiff notes that she has difficulty concentrating, but she did well on the [mental status exam] and in conversation."  Tr. 593.  To the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999).  Further, where evidence is subject to more than one rational interpretation, the ALJ's conclusion will be upheld.  *Burch*, 400 F.3d at 679.  The Court will only disturb the ALJ's findings if they are not supported by substantial evidence.  *Hill*, 698 F.3d at 1158.  The ALJ reasonably concluded that Dr. Cline's opinion Plaintiff had moderate and marked limitations was inconsistent with findings upon mental status exam, and that Dr. Cline did not sufficiently support some of her findings.  These were specific and legitimate reasons to give Dr. Cline's opinion less weight.

### 3.  Dr. Regets

In November 2016, Dr. Regets, reviewed Plaintiff's records and rendered an opinion on her level of functioning.  Tr. 129-30.  Dr. Regets found Plaintiff was moderately limited in her ability to complete a normal workday and workweek without complications from psychologically based symptoms and to perform at a

ORDER - 19

consistent pace without an unreasonable number and length of rest periods; and

that she could perform simple, repetitive tasks.  Tr. 130.

The ALJ gave significant weight to Dr. Regrets opinion that Plaintiff was

limited to simple repetitive tasks because "this limitation is important given the

presence of anxiety and PTSD." Tr. 22.  As Dr. Regents was a nonexamining

psychologist, the ALJ must show that the opinion was supported by other

independent evidence in the record.  *See Andrews*, 53 F.3d at 1041.  While the ALJ

did not provide additional explanation in her discussion of Dr. Reget's opinion,

elsewhere in the decision the ALJ noted Plaintiff was able to complete serial threes

upon mental status exam in 2016, that primary care records "repeatedly

characterize her as having a normal memory," and that she was able to complete

worksheets and written impact statements as part of her outpatient treatment in

2015.  Tr. 17-18 (citing Tr. 375-76, 402-34, 438-46, 450).  Further, both examining

psychologists also opined that Plaintiff would not have difficulty performing

simple and repetitive tasks.  *See* Tr. 451, 595.  Records show a history of mental

health diagnosis, including depression, anxiety, and PTSD, with treatment during

the period at issue including medication and therapy.  *See, e.g.*, Tr. 363-99, 453-

480.

"[T]he ALJ is responsible for translating and incorporating clinical findings

into a succinct RFC." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006

(9th Cir. 2015).  Where evidence is subject to more than one rational interpretation, the ALJ's conclusion will be upheld.  *Burch*, 400 F.3d at 679.  The Court will only disturb the ALJ's findings if they are not supported by substantial evidence.  *Hill*, 698 F.3d at 1158.  Here, as explained *supra*, the ALJ's reasoning throughout the decision sufficiently shows how the reviewing psychologist's opinion is supported by other independent evidence in the record.  The ALJ's explanation and interpretation of the reviewing psychologist's opinion is reasonable and supported by substantial evidence.

As discussed *supra*, the ALJ provided specific and legitimate reasons to give the examining psychologists less weight, and the opinion of Dr. Regents is supported by other independent evidence in the record.  Plaintiff is not entitled to remand on this issue.

**B. Plaintiff's Symptom Reports**

Plaintiff contends the ALJ improperly rejected Plaintiff's symptom complaints.  ECF No. 15 at 5-12.  An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).  "The claimant is not required

ORDER - 21

to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester*, 81 F.3d at 834; *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he or she discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

side effects of any medication an individual takes or has taken to alleviate pain or

other symptoms; 5) treatment, other than medication, an individual receives or has

received for relief of pain or other symptoms; 6) any measures other than treatment

an individual uses or has used to relieve pain or other symptoms; and 7) any other

factors concerning an individual's functional limitations and restrictions due to

pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §

416.929(c). The ALJ is instructed to "consider all of the evidence in an

individual's record," to "determine how symptoms limit ability to perform work-

related activities." SSR 16-3p, 2016 WL 1119029, at *2. Here, the ALJ found that

Plaintiff's medically determinable impairments could reasonably be expected to

cause the alleged symptoms, but that Plaintiff's statements concerning the

intensity, persistence, and limiting effects of her symptoms were not entirely

consistent with the evidence. Tr. 19.

### 1. Inconsistent with Objective Medical Evidence

The ALJ found Plaintiff's symptom claims were inconsistent with the

medical evidence. Tr. 19-22. An ALJ may not discredit a claimant's symptom

testimony and deny benefits solely because the degree of the symptoms alleged is

not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853,

857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991);

*Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d

676, 680 (9th Cir. 2005). However, the objective medical evidence is a relevant

factor, along with the medical source's information about the claimant's pain or

other symptoms, in determining the severity of a claimant's symptoms and their

disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).

Here, the ALJ found that Plaintiff had only a brief course of mental health

treatment in 2015, followed by a gap in treatment for over a year, and that therapy

session records did not document abnormalities in Plaintiff's presentation. Tr. 20.

The ALJ noted Plaintiff had not required emergency intervention for mental health

symptoms or inpatient admission for psychiatric treatment during the period at

issue. *Id*. The ALJ noted there are not objective findings to support reports of

episodes of panic or panic attacks. *Id*. The ALJ noted that primary care and other

records show generally unremarkable presentation, providers observed normal

mood and affect, and "her mental conditions were often not even included in her

assessment list." Tr. 21 (citing Tr. 402-434, 438-46). For example, her mood,

affect, memory, and judgement appeared normal at appointments in 2015, 2016,

2017, and 2018. *See* Tr. 379, 386, 431, 443, 512, 520, 540.

As for her physical impairments, the ALJ noted as of January 2015 Plaintiff

weighed 312 pounds, with a BMI of 53, and that her diabetes was characterized as

uncontrolled with an A1C of 8.3. Tr. 21. The ALJ noted her provider's

recommendations at that time included better controlling her glucose with

ORDER - 24

increased exercise and improved diet.  Tr. 21 (citing Tr. 404-07).  In April 2016,

her provider noted she was improving slowly and that they would consider

possibly starting insulin but "plan[ned] to allow her another three months to get her

sugars back down as she was controlled with A1C of 7.2 one year ago."  Tr. 433.

The ALJ noted Plaintiff's fluctuating levels with treatment throughout the period at

issue, also noting a provider's observation that her poor diabetes control was often

attributable to non-compliance with treatment.  Tr. 21 (citing Tr. 407, 411-12, 416-

17, 421, 427-28, 431-33, 438-39, 515-16, 526, 536).  The ALJ noted she

successfully lost some weight during the period at issue, as she was 281 pounds in

January 2018, with a BMI below 50.  Tr. 21-22 (citing Tr. 511).  The ALJ also

noted there were no documented complications from her diabetes during the period

at issue.  Tr. 22.

The Court must consider the ALJ's decision in the context of "the entire

record as a whole," and if the "evidence is susceptible to more than one rational

interpretation, the ALJ's decision should be upheld."  *Ryan v. Comm'r of Soc. Sec.*,

528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted).  Further,

where the ALJ's interpretation of the record is reasonable, as it is here, it should

not be second-guessed.  *Rollins*, 261 F.3d at 857.  On this record, the ALJ

reasonably concluded that the objective medical evidence is not consistent with

Plaintiff's complaints of disabling symptoms during the period at issue.  This

finding is supported by substantial evidence and was a clear and convincing

reason, along with the other reasons offered, to discount Plaintiff's symptoms

complaints.

### 2. Lack of Treatment/ Failure to Follow Prescribed Treatment

The ALJ found that Plaintiff's symptom claims were inconsistent with her

lack of ongoing mental health treatment, and that she failed to comply with

treatment recommendations.  Tr. 19-21.  An unexplained, or inadequately

explained, failure to seek treatment or follow a prescribed course of treatment may

be considered when evaluating the claimant's subjective symptoms.  *Orn*, 495 F.3d

at 638.  When there is no evidence suggesting that the failure to seek or participate

in treatment is attributable to a mental impairment rather than a personal

preference, it is reasonable for the ALJ to conclude that the level or frequency of

treatment is inconsistent with the alleged severity of complaints.  *Molina*, 674 F.3d

at 1113-14.  But when the evidence suggests lack of mental health treatment is

partly due to a claimant's mental health condition, it may be inappropriate to

consider a claimant's lack of mental health treatment when evaluating the

claimant's failure to participate in treatment.  *Nguyen v. Chater*, 100 F.3d 1462,

1465 (9th Cir. 1996).

Here, the ALJ found Plaintiff's mental health treatment since the alleged

onset date has been sporadic and brief.  Tr. 19-20.  The ALJ noted that based on

ORDER - 26

therapy records, Plaintiff did not appear to be attending therapy regularly as of her alleged onset date.  Tr. 20.  The ALJ acknowledged Plaintiff resumed therapy in April 2015 but noted that this was only a brief course of therapy that ended in September 2015.  Tr. 20 (citing Tr. 375, 387).  The ALJ noted this was followed by a gap in mental health treatment for over a year.  Tr. 20.

The ALJ noted that at a consultative evaluation in 2016, Plaintiff reported she was not taking psychotropic medication and was no longer in counseling.  Tr. 20 (citing Tr. 447-52).  The ALJ noted Plaintiff engaged in treatment again in 2016, but that this was also brief, as Plaintiff "only attended a couple of individual therapy appointments in December 2016" and that there is no documentation of ongoing therapy after that time.  Tr. 20 (citing Tr. 464-65).  Plaintiff contends her failure to seek consistent treatment was due to her mental health impairments.  ECF No. 15 at 6.  However, the ALJ noted records showed Plaintiff appeared to remain stable despite little to no treatment at times, as evidenced by generally normal presentation at appointments, and that she did not require emergency intervention for mental health symptoms or inpatient admission for psychiatric treatment.  Tr. 20-21.  As discussed *supra*, despite some abnormalities in the records, Plaintiff also had numerous normal mental status examinations during the period at issue.  In terms of compliance with treatment, the ALJ also noted that in January 2018 Plaintiff told a treatment provider, in regard to diabetes medications,

ORDER - 27

1  "I'm tired of taking all those pills. It grosses me out. I quit taking them about

2  Thanksgiving." Tr. 515.

3       Where the ALJ's interpretation of the record is reasonable, as it is here, it

4  should not be second-guessed. *Rollins*, 261 F.3d at 857. On this record, the ALJ

5  reasonably discounted Plaintiff's symptoms claims because records show

6  inconsistent treatment and that Plaintiff did not follow treatment recommendations

7  during the period at issue, and this was a clear and convincing reason to discount

8  Plaintiff's symptom reports.

9       *3. Improvement/Controlled with Treatment*

10       The ALJ also discounted Plaintiff's symptom claims because records

11  document improvement with treatment. Tr. 19, 21-22. The effectiveness of

12  medication and treatment is a relevant factor in determining the severity of a

13  claimant's symptoms. 20 C.F.R. 416.913(c)(3); *see Warre v. Comm'r of Soc. Sec.*

14  *Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Tommasetti*, 533 F.3d at 1040 (A

15  favorable response to treatment can undermine a claimant's complaints of

16  debilitating pain or other severe limitations.).

17       Here, the ALJ found, for example, that Plaintiff "showed an ability to

18  improve her glucose levels" when she complied with treatment, but also noted that

19  her compliance with diabetes treatment, in particular, "was only temporary." Tr.

20  21 (citing Tr. 433). The ALJ pointed out that Plaintiff acknowledged lack of

ORDER - 28

compliance with treatment, including consuming fruit juice and other sweets in early 2017, and that she had stopped taking her medications in November 2017. Tr. 21 (citing Tr. 515, 536).  However, the ALJ noted that she was continued on oral medication for her diabetes and was not advanced to insulin management during the period at issue, and that "despite poor control of her diabetes, [Plaintiff] successfully lost some weight."  Tr. 21 (citing Tr. 511).

If the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld."  *Ryan*, 528 F.3d at 1198 (internal quotation marks omitted).  On this record, the ALJ reasonably interpreted the evidence and permissibly discounted Plaintiff's subjective complaints based on evidence her symptoms showed improvement when treated.

*4.  Situational Stressors*

The ALJ found that Plaintiff's symptoms were related to situational stressors.  Tr. 20.  If a claimant suffers from limitations that are transient and result from situational stressors, as opposed to resulting from a medical impairment, an ALJ may properly consider this fact in discounting Plaintiff's symptom claims. *See Chesler v. Colvin*, 649 F. App'x 631, 632 (9th Cir. 2016) (symptom testimony properly rejected in part because "the record support[ed] the ALJ's conclusion that [plaintiff's] mental health symptoms were situational").  An ALJ may also reasonably find a claimant's symptom testimony less credible where the evidence

"squarely support[s]" a finding that the claimant's impairments are attributable to situational stressors rather than impairments. *Wright v. Colvin*, No. 13-CV-3068-TOR, 2014 WL 3729142, at *5 (E.D. Wash. July 25, 2014) ("Plaintiff testified that she would likely be able to maintain full-time employment but for the 'overwhelming' stress caused by caring for her family members"). However, "because mental health conditions may presumably *cause* strained personal relations or other life stressors, the Court is not inclined to opine that one has caused the other based only on the fact that they occur simultaneously." *Brendan J. G. v. Comm'r, Soc. Sec. Admin.*, No. 6:17-CV-742-SI, 2018 WL 3090200, at *7 (D. Or. June 20, 2018) (emphasis in original).

Here, the ALJ found a situational component to Plaintiff's symptoms, noting Plaintiff attributed many of her mood problems to the death of her daughter in 2009 and her mother in 2015, both from cancer. Tr. 20; *see* Tr. 447. The ALJ noted, for example, "even [Plaintiff] described her depressive episodes as occurring infrequently and . . . precipitated by unusual situations such as the death of a close family member." Tr. 20. The ALJ also noted Plaintiff appeared to remain stable, as indicated by normal presentation at appointments and lack of

sustained treatment, despite any symptoms or increase of symptoms due to situational stressors.  Tr. 20-21.

Counseling records from 2014 show that Plaintiff experienced "a great deal of depression due to her daughter's death" and "needs a lot of grieving and thought redirection work," but her therapist also noted a "trauma history."  Tr. 391.  In 2016, her primary care provider expressed some concern that she might be using alcohol again, as liver function was abnormal and the "recent death of her mother has been hard for her."  Tr. 425.

Plaintiff's increased symptoms due to the death of family members may not be caused by Plaintiff's impairments.  However, records also show a history of trauma, and other issues that are less clearly separable from Plaintiff's mental impairments.  Unlike prior cases in this district, where the record clearly contained evidence that the claimant would have been capable of working but for the presence of a specific situational stressor, here Plaintiff's impairments and situational stressors appear more complex and intertwined.  *See Wright*, 2014 WL 3729142, at *5.  Additionally, "[t]he Court is not inclined to opine that one has caused the other based only on the fact that they occur simultaneously."  *Brendan*, 2018 WL 3090200, at *7.  On this record, it is not clear Plaintiff would have been capable of working but for the presence of specific situational stressors, including

grief from the death of close family members, or that she experienced only transient situational stressors.

Even if the ALJ erred in discounting Plaintiff's symptoms complaints because there was a situational component, any error is harmless because the ALJ provided other specific, clear, and convincing reasons to discount Plaintiff's symptom claims. *See Carmickle*, 533 F.3d at 1162-63; *Batson*, 359 F.3d at 1197 (holding that any error the ALJ committed in asserting one impermissible reason for claimant's lack of credibility did not negate the validity of the ALJ's ultimate conclusion that the claimant's testimony was not credible). Plaintiff is not entitled to remand on this issue.

**C. Medical Expert Testimony**

Plaintiff contends the ALJ erred by failing to obtain medical expert testimony. ECF No. 15 at 19-20. The ALJ has an independent duty to fully and fairly develop a record in order to make a fair determination as to disability, even where, as here, the claimant is represented by counsel. *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1995). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an

ORDER - 32

appropriate inquiry.'"  *See Tonapetyan*, 242 F.3d at 1150 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996).

Here, the ALJ denied Plaintiff's request to obtain testimony from a medical expert via interrogatories.  Tr. 13 (citing Tr. 351-52).  However, Plaintiff's attorney's mere request for a medical expert does not trigger the ALJ's duty to develop the record.  *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered *only when* there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.") (emphasis added).  Here, the ALJ noted that the need for a medical expert's opinion was left to the discretion of the ALJ and found that "in the present case . . . the record has been adequately developed and [the ALJ] has sufficient information from which to make a decision on this claim without the testimony or opinion of a medical expert."  Tr. 13.

Plaintiff contends medical experts were scheduled to appear for the May 2019 hearing, pointing out that a curriculum vitae for K. Asher, Ph.D. appears in the administrative record, but that Dr. Asher was not present at the administrative hearing; Plaintiff contends the ALJ therefore erred by declining Plaintiff's request to send interrogatories to Dr. Asher.  ECF No. 15 at 19 (citing Tr. 583-91). Defendant contends the ALJ's duty to develop the record further was not triggered, substantial evidence supports the ALJ's finding that the record had been

adequately developed, and that the ALJ properly exercised her discretion when denying Plaintiff's motion, as she expressly found that the record was adequate for adjudication.  ECF No 16 at 16-17.

Review of the record shows that the doctors' resumes, including Dr. Asher, in the administrative record are dated May 2018; review of the hearing transcripts also shows that Plaintiff's hearing was originally scheduled for June 20, 2018, but that her hearing was rescheduled on the morning of the hearing due to what appears to have been an error at the hearing office.[4]  *See* Tr. 42-45.  The June 2018 hearing transcript shows the doctors, including Dr. Asher, appeared via phone at

---

[4] Based on the transcript from June 20, 2018, it is also not clear that Plaintiff appeared for her hearing that day.  *See* Tr. 42-43.  Regardless, records show after an apparent miscommunication with Social Security hearing staff and Plaintiff's representative about the hearing for a different claimant, an ALJ told Plaintiff's representative he could choose which claimant to go forward with on that day, but that the ALJ would hear only one of the claimant's cases because she was already one hour and ten minutes behind.  Tr. 43.  Plaintiff's representative chose to go ahead with the other claimant's hearing, noting he was unsure if Plaintiff had arrived at the hearing office, or if she was still there.  *See* Tr. 42-43.  Plaintiff's hearing was rescheduled for 11 months later in May 2019.  Tr. 222-28.

ORDER - 34

1    that time and had been scheduled for both Plaintiff and another claimant's hearing

2    on June 20, 2018.  *See* Tr. 43-44.

3         At the 2019 hearing, Plaintiff's representative did not inquire about a

4    medical expert.  *See* Tr. 46-86.  At the hearing, the ALJ noted that the last exhibit

5    in the file was from February 2018, and Plaintiff's representative replied that while

6    his office had lost contact with Plaintiff for a time, he had discussed the record

7    with Plaintiff and determined it was up to date at the time of the hearing.  Tr. 49-

8    50.  The ALJ noted, "so no medical care since February 2018" and Plaintiff's

9    representative reported that "she had a bad episode of decompensation and lost her

10   home and just fell out of it . . . [but] she's going to work on getting back into that."

11   Tr. 49-50.  Plaintiff's representative and the ALJ also discussed the fact that

12   Plaintiff had failed to appear for physical consultative examinations, but Plaintiff's

13   representative noted "physical [impairment] isn't really the main issue at all."  Tr.

14   51-52.  Plaintiff's representative and the ALJ also discussed the fact that Plaintiff

15   had a psychological consultative evaluation in 2016.  Tr. 52.

16        Plaintiff's representative did not address the lack of psychological expert

17   testimony at the time of the hearing, although he submitted a letter after the

18   hearing, at the ALJ's suggestion, *see* Tr. 83-84, requesting a potential onset date of

19   disability at the time of Dr. Patterson's 2016 psychological evaluation and report.

20   Tr. 351-52.  This is the first time Plaintiff requested interrogatories be sent to Dr.

Asher, and the first time Plaintiff inquired about medical expert testimony, writing that Dr. Asher was scheduled but "suddenly taken off the docket." *Id*.

There is no evidence the ALJ found the record inadequate or ambiguous. The ALJ told Plaintiff's representative at the hearing that she would "consider anything you could submit to me in writing that would kind of help . . . establish some kind of change in her condition . . . ." Tr. 84. She also told Plaintiff at the hearing that she wanted to go over the record again, noting, "I'm going to wait just a week or so to see if I can sort out whether or not there's been a significant enough change to overcome the . . . decision that was made [by] the prior administrative judge . . . that the condition . . . or evidence has changed significantly enough to alter that result." Tr. 84-85.

The ALJ did not indicate the record was ambiguous or inadequate for her to decide, only that she was having difficulty finding any evidence that would make her change the result of the 2014 ALJ decision finding Plaintiff not disabled. *See id*. In fact, she told Plaintiff at the hearing "I'm having a real difficult time where she has . . . the ALJ decision was November 26, 2014 and this application was filed just two months later and trying to find any discernable difference." Tr. 83. The ALJ told Plaintiff she could submit something in writing or more evidence, noting "I want to review the records again . . . but it sounds quite similar in many

ORDER - 36

ways to what was happening in . . . 2014/2015, that it has been sort of an ongoing issue." Tr. 83-84.

Because Plaintiff has not demonstrated that the record was ambiguous or inadequate, Plaintiff has not demonstrated that the ALJ failed to meet her duty to develop the record by allowing Plaintiff to submit interrogatories to Dr. Asher. Nor has Plaintiff shown the ALJ abused her discretion in denying Plaintiff's request to submit interrogatories to Dr. Asher.

Plaintiff is not entitled to remand on this issue.

**D. Step Five/RFC**

Plaintiff contends the ALJ erred because the RFC is consistent with disability. ECF. No 15 at 4-5. At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to establish that 1) the claimant can perform other work, and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran*, 700 F.3d at 389. In assessing whether there is work available, the ALJ must rely on complete hypotheticals posed to a vocational expert. *Nguyen*, 100 F.3d at 1467. The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record that reflects all of the claimant's limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101.

The hypothetical that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical that is predicated on the ALJ's final RFC assessment, must account for all the limitations and restrictions of the claimant. *Bray*, 554 F.3d at 1228. As discussed above, the ALJ's RFC need only include those limitations found credible and supported by substantial evidence. *Bayliss*, 427 F.3d at 1217 ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record."). "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Id*. However, the ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006). Therefore, the ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel if they are not supported by substantial evidence. *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986). A claimant fails to establish that a step five determination is flawed by simply restating argument that the ALJ improperly discounted certain evidence, when the record demonstrates the evidence was properly rejected. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

ORDER - 38

1    Plaintiff contends that the RFC is consistent with disability, based on VE

2    testimony.  ECF No. 15 at 4-5.  However, Plaintiff is essentially inviting this Court

3    to reweigh the evidence based on her hypotheticals to the VE.  *Id*.  The Court will

4    only disturb the ALJ's findings if they are not supported by substantial evidence.

5    *Hill*, 698 F.3d at 1158.  Plaintiff's argument is based on the assumption that the

6    ALJ erred in considering the opinion evidence and Plaintiff's symptom claims.

7    For reasons discussed throughout this decision, the ALJ's consideration of

8    Plaintiff's symptom claims and the medical opinion evidence is legally sufficient

9    and supported by substantial evidence.  Thus, the ALJ did not err in assessing the

10    RFC or finding Plaintiff capable of performing work existing in the national

11    economy.

12    **E.  Step four**

13    Plaintiff contends the ALJ erred in assessing Plaintiff's past relevant work.

14    ECF No 15 at 20-21.  At the fourth step of the sequential evaluation process, the

15    claimant has the burden "to prove that [s]he cannot perform his prior relevant work

16    either as actually performed or as generally performed in the national economy."

17    *Carmickle*, 533 F.3d at 1166 (citing *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th

18    Cir. 2002) (internal quotation marks omitted)).  Past relevant work is work that was

19    "done within the last 15 years, lasted long enough for [claimant] to learn to do it,

20    and was substantial gainful activity."  20 C.F.R. § 416.965(a).  Substantial gainful

ORDER - 39

1    activity is work activity that "involves doing significant physical or mental

2    activities" on a full– or part-time basis, and "is the kind of work usually done for

3    pay or profit." 20 C.F.R. § 416.972. Generally, if a claimant works for substantial

4    earnings as described in the regulations, the work is found to be substantial gainful

5    activity. 20 C.F.R. § 416.974(a).

6        At step four, the ALJ adopted the findings from the prior hearing decision

7    regarding Plaintiff's ability to perform past relevant work, finding that she could

8    perform past relevant work as an agriculture produce worker. Tr. 24 (citing Tr.

9    105-06). Plaintiff contends the ALJ erred because earnings records show Plaintiff

10   did not earn at SGA levels at this job and therefore this work could not constitute

11   past relevant work. ECF No. 15 at 20-21 (citing Tr. 266-67). Defendant points out

12   that the Court need not reach this argument because the ALJ made alternate

13   findings at step five, finding Plaintiff capable of performing several other

14   occupations based on VE testimony. ECF No. 16 at 19-20. The Court agrees. As

15   discussed *supra*, the ALJ's step five findings are supported by substantial

16   evidence. In fact, the ALJ explained she proceeded to step five, making alternate

17   findings, because "even if the [Plaintiff's] prior work as an agricultural sorter

18   cannot be considered past relevant work, there is other work that someone with

19   [her RFC] could perform." Tr. 24-25. Any error in finding she could perform

20   PRW at step four was harmless because the ALJ made alternate step five findings

ORDER - 40

that were supported by substantial evidence, as explained *supra*.  Therefore, the Court declines to further address this argument.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Kilolo Kijakazi as Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 16,** is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED September 27, 2022.

<u>*s/Mary K. Dimke*</u>
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 41